

ENTERED
01/21/2021

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| **UPLIFT RX, LLC**, *et al*, Debtors. | § | **CASE NO: 17-32186** |
| | § | |
| | § | **CHAPTER 11** |
| | § | |
| **MARK SHAPIRO, LIQUIDATING** | § | |
| **TRUSTEE OF THE ALLIANCE HEALTH** | § | |
| **LIQUIDATING TRUST,** | § | |
| Plaintiff, | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 19-3431** |
| | § | |
| **WALL STREET HEALTH SERVICES,** | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

The Liquidating Trustee of the Alliance Health Liquidating Trust, Mark Shapiro, seeks leave to amend the complaint. Specifically, the Trustee wants to add new claims and new defendants to this adversary proceeding. Wall Street Health Services LLC ("Wall Street") opposes the Trustee's motion. The parties' dispute centers on three issues: (1) whether "good cause" exists to allow the Trustee to amend the complaint after the expiration of the pleading amendment deadline; (2) whether the claims the Trustee seeks to add arise out of the same "conduct, transaction, or occurrence" pleaded in the Original Complaint; and (3) whether the new defendants received the "notice" required by Federal Rule of Civil Procedure 15(c).

There is "good cause" to allow the Trustee to amend the complaint, in part, after the deadline set by the Court's Scheduling Order. The new claims the Trustee hopes to add are not part of the same "conduct, transaction, or occurrence" set out in the Original Complaint. Two of the defendants the Trustee seeks to add—PetersonRX LLC and Dow Jones—received notice of the Original Complaint. The remaining prospective defendants did not. The Trustee is Granted

leave to add PetersonRX and Dow Jones as defendants, but the Trustee is Denied leave to add the additional claims and remaining additional defendants.

## BACKGROUND

The Original Complaint sought to avoid and recover certain fraudulent and preferential transfers made by the Debtor, Uplift RX, LLC, and certain of its debtor affiliates (collectively, "the Debtors").[1]  The Original Complaint alleged that Wall Street was the sole transferee of these transfers (the "Original Transfers").  (*See* ECF No. 1).  After exchanging discovery with Wall Street, the Trustee discovered additional transfers, which the Trustee now seeks to avoid, as well as additional transferees, which the Trustee now seeks to join as defendants.  (ECF No. 23 at 3).

### *The Original Complaint*

The Original Complaint was filed on April 5, 2019.  (ECF No. 1).[2]  It alleged that Uplift RX, LLC, Richardson Pharmacy LLC, New Jersey Rx, LLC, Kendall Pharmacy, Inc., Skyline Health Services, and Alliance Medical Administration, Inc. made preferential and fraudulent transfers to Wall Street.  (ECF No. 1 at 6–24).  These transfers were identified using the Debtors' accounts payable records, which identified Wall Street as the transferee.  (ECF Nos. 23 at 5; 23-2 at 1–3).  The Original Complaint and Summons were on served Wall Street through its principal and registered agent, Dow Jones, on April 11, 2019.  (ECF No. 4 at 2).

Wall Street delayed almost seven months before answering the Original Complaint.  (*See* ECF No. 14).  Because of its delay, Wall Street was required to seek leave to file a late answer.

---

[1] The other Debtors implicated in this adversary proceeding include Richardson Pharmacy LLC (Case No. 17-32193), New Jersey Rx, LLC (Case No. 17-32206), Skyline Health Services, LLC (Case No. 17-32212), Kendall Pharmacy, Inc (Case No. 17-32198), Alliance Medical Administration, Inc. (Case No. 17-32246), Benson Pharmacy, Inc. (Case No. 17-32191).  (ECF Nos. 1 at 2; 23-1 at 2, 38).  The order for relief in Skyline's case was entered on April 8, 2017.  The orders for relief in the remaining Debtors' cases were entered on April 7, 2017.

[2] The Original Complaint was filed by the Debtors.  (ECF No. 1).  However, Mark Shapiro, the liquidating trustee, was substituted for the Debtors as Plaintiff.  (ECF No. 9 at 1–2).

(*See* ECF No. 16).  The Trustee did not oppose Wall Street's request for leave to file its answer. (ECF No.  16 at 2).

After Wall Street answered, the Court entered a comprehensive Scheduling Order.  The Scheduling Order set the deadline for pleading amendments for February 24, 2020 and the discovery deadline for June 24, 2020.  (ECF No. 20 at 1).  On January 9, 2020, the Trustee served its first set of discovery requests on Wall Street.  (ECF No. 23 at 10).  Wall Street produced its responses on February 10, 2020 (ECF No. 27 at 2).

### *The Additional Transfers and Defendants*

In its discovery responses, Wall Street asserted that it did not receive the benefit of certain transfers identified in the Original Complaint.  (ECF No. 27 at 2).  Based on Wall Street's responses, the Trustee began investigating the accuracy of Wall Street's assertion.  (ECF No. 23 at 2).  Along with this investigation, the Trustee sought to depose Dow Jones, Wall Street's principal and registered agent.  (ECF No. 23 at 5).  As of the filing of the Trustee's Motion for Leave to Amend, the Trustee had not yet deposed Mr. Jones.  (ECF No. 23 at 9).

Through this investigation, the Trustee discovered that Wall Street "was not the initial transferee of a number of the [Original] Transfers."  (ECF No. 23 at 5).  The Trustee also discovered 13 additional preferential or fraudulent transfers (the "Additional Transfers").  (ECF No. 23 at 4–6).  These discoveries led the Trustee to seek leave to amend the Original Complaint. (ECF No. 23 at 6).  Specifically, the Trustee wants to add the newly discovered transferees of the Original Transfers as defendants (the "Additional Defendants"),[3] as well as new avoidance claims based on the Additional Transfers.  (ECF No. 23 at 6).

---

[3] The Additional Defendants are Dow Jones, individually; Kathryn Jones, individually; PetersonRX, LLC; Twin Lakes, LLC; David Pharmacy, LLC; Alameda Pharmacy LLC; El Dorado Pharmacy LLC; and Baytree Pharmacy LLC.  (ECF No. 23 at 8).

### *The Trustee's Motion for Leave to Amend*

On June 10, 2020, the Trustee sought leave to amend the complaint.  (*See* ECF No. 23).

Because the Trustee did not amend the Original Complaint before the pleading amendment

deadline in the Scheduling Order, the Trustee must be granted leave to amend.  In support of the

request for leave, the Trustee argues that "good cause" exists to authorize this post-deadline

amendment.  (ECF No. 23 at 13–15).  The Trustee primarily argues that "good cause" exists

because the delay in moving to amend resulted from the need for an additional investigation based

on Wall Street's discovery responses.  (ECF No. 23 at 13–14).

As a basis for including the Additional Transfers, the Trustee argues that the Additional

Transfers arise from the same "conduct, occurrence, or transaction" alleged in the Original

Complaint.  (ECF No. 23 at 11).  The Trustee alleges that the same "conduct, transaction, or

occurrence" from which the Additional Transfers arose was a "convoluted payment scheme."

(ECF No. 23 at 6).  Through this "convoluted payment scheme," the Debtors would transfer funds

to multiple entities, those entities would then transfer funds to a single entity, and then that single

entity would use the funds to pay down credit card debt held by Mr. Jones, Kathryn Jones (Dow

Jones's wife), and other entities associated with the Joneses.  (ECF No. 23 at 5–6).  The existence

of this "scheme" was not alleged in the Original Complaint.

As for the inclusion of the Additional Defendants, the Trustee argues that the Additional

Defendants received adequate notice of the Trustee's action through their relationships with Mr.

Jones.  (ECF No. 23 at 15–20).  Specifically, the Trustee asserts that Mr. Jones, who received the

Original Complaint on behalf of Wall Street, acted as an agent for or on behalf of the Additional

Defendants, or that the Additional Defendants are so closely related to Wall Street that they effectively received adequate notice.  (ECF No.  23 at 15–20).[4]

Wall Street opposes the Trustee's motion on two grounds.  First, Wall Street argues that Trustee's motion to amend after the Scheduling Order deadline is not supported by "good cause." (ECF No. 32 at 6).  "Good cause" is lacking, Wall Street contends, because the Trustee's explanation for the delay in seeking leave to amend is insufficient.  (ECF No. 32 at 3–6).  Wall Street grounds its charge of insufficiency in the fact that the Trustee had access to the Debtors' Statements of Financial Affairs ("SOFAs"), some of which disclose the identity of the Additional Defendants, as well as the existence of some of the Additional Transfers.  (ECF No. 32 at 4).

Second, Wall Street argues that there is a "substantial reason" to deny the Trustee leave to amend.  (ECF No. 27 at 4–5).  The "substantial reason" Wall Street points to is the alleged futility of the Trustee's proposed amended complaint (the "Amended Complaint").  (ECF No. 27 at 7–12).  Wall Street argues that the proposed amendments are futile because 11 U.S.C. § 546(a) bars their assertion in the Amended Complaint.  (ECF No. 27 at 5–6).  Further, Wall Street argues that the doctrine of relation back, which is codified in Federal Rule of Civil Procedure 15(c), cannot salvage the Amended Complaint.  (ECF No. 27 at 7, 12).  Rule 15(c) cannot salvage the claims based on the Additional Transfers because they do not arise the same "conduct, transaction or occurrence" set out in the Original Complaint.  (ECF No. 27 at 7, 12).  Nor can Rule 15(c) salvage the claims against the Additional Defendants because the Additional Defendants did not receive the notice required by Rule 15(c)(1)(C).  (ECF No. 27 at 7–11).  Wall Street also contends that the

---

[4] Notably, Wall Street's manager and registered agent, Dow Jones, serves as the manager and registered agent of Jones Family Enterprises, LLC.  (ECF Nos. 23-3; 23-5).  Jones Family Enterprises serves as a manager for and registered agent of PetersonRX LLC.  (ECF No. 33-4).  All three entities share the same address—2 Falconwood Ln., Sandy, UT.  (ECF Nos. 23-3, 23-5, 33-4).  Ms. Kathryn Jones serves as a member of Jones Family Enterprises.  (ECF No. 23-6).  Additionally, Mr. Jones has communicated on behalf of Alameda, Baytree, David, El Dorado, and Twin Lakes.  (ECF No. 33-8 at 3–4).  Mr. Jones also holds credit cards linked to accounts held by Alameda, Twin Lakes, and PetersonRX (ECF Nos. 33-7 at 1; 33-9 at 1; 33-10 at 1).

Additional Defendants were not *mistakenly* omitted by the Trustee—as required by Rule 15(c)(1)(C)—but were instead omitted because the Trustee was unaware the Additional Defendants' existed.  (ECF No. 27 at 8–10).  Wall Street concludes that relation back under the strictures of Rule 15(c) is unavailable to the Trustee; thus 11 U.S.C. § 546(a) bars the Trustee from asserting the claims alleged in the Amended Complaint.  (ECF Nos. 27 at 12; 32 at 6).

After a hearing, the Court took the matter under advisement.  This Memorandum Opinion disposes of the Trustee's motion.

## JURISDICTION

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court under General Order 2012-6.

## ANALYSIS

The Trustee seeks leave to amend the complaint after the mandated deadline for pleading amendments.  Wall Street opposes the Trustee's request primarily because the Trustee's proposed amendments are barred by applicable statutes of limitations.  Wall Street also challenges the sufficiency of the Trustee's explanation for why the Trustee failed to adhere to the Scheduling Order.

Good cause exists to allow the Trustee to amend the complaint despite the expiration of the pleading amendment deadline set out in this Court's Scheduling Order.  The Trustee is granted leave to amend to add certain defendants to this adversary proceeding because the claims asserted against these new defendants relate back to the Original Complaint.  However, the remaining claims proposed by the Trustee's amendment would be futile because they are time-barred.

I.     RULE 16 SCHEDULING ORDER MODIFICATION

The Trustee argues that "good cause" supports modification of the Scheduling Order because, at the time the Scheduling Order was entered, the Trustee was unaware of the need to amend the Original Complaint.  In response, Wall Street asserts that the Trustee was aware of the Additional Transfers and Additional Defendants before the expiration of the pleading amendment deadline.  (ECF No. 32 at 6).  Aside from its assertion that the Trustee failed to exercise diligence by timely seeking leave to amend, Wall Street offers little else supporting denial of modification under Rule 16(b).  There is good cause to authorize modification of the Scheduling Order.

Federal Rule of Civil Procedure 15 governs the amendment of pleadings.  FED. R. CIV. P. 15.  However, Rule 16 restricts amendments when a court has entered a scheduling order setting a deadline for amendments.  FED. R. CIV. P. 16(b); *see also S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003).[5]  If the amendment deadline has passed, the scheduling order must be modified to allow amendments.  *S&W Enters.*, 315 F.3d at 535–36; *see also* FED. R. CIV. P. 16(b)(4).  The court may allow modification for "good cause."  *S&W Enters.*, 315 F.3d at 535–36.  A finding of good cause rests on a consideration of four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  *Id.* at 535 (quoting *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir.1997)).  At bottom, the focus of the "good cause" analysis is the movant's diligence in attempting to comply with the scheduling order.  *Id.*

The Trustee explains that he failed to timely seek leave to amend because he was not aware of the Additional Transfers and Additional Defendants until receiving discovery.  Wall Street

---

[5] Federal Rules of Bankruptcy Procedure 7015 and 7016 make Rules 15 and 16 applicable in adversary proceedings.  FED. R. BANKR. P. 7015, 7016.

disputes the efficacy of the Trustee's explanation, pointing to the SOFAs filed by the Debtors in their main bankruptcy cases. Specifically, Wall Street points out that Uplift's SOFA discloses the Original Complaint was incorrect in its assertion that Wall Street was the Transferee of one of the Original Transfers. Instead, this specific transfer went to Twin Lakes.[6] Wall Street also points to AMA's SOFA and asserts that the Trustee knew of two of the Additional Transfers prior to the pleading amendment deadline.[7] The SOFAs make clear that, prior to the amendment deadline, the Trustee had information that would have allowed the Trustee to avoid the need for *some* of the amendments now proposed.

Though the Trustee had such information, the allegations in the Original Complaint were not without basis. The claims alleged in the Original Complaint were based on the Debtors' accounts payable records. Every Original Transfer, on which the claims in the Original Complaint were based, corresponds with a transaction reflected in these records. (*Compare* ECF No. 1-1 *with* ECF No. 23-2). These records reflect that Wall Street was the transferee of the Original Transfers. It was reasonable for the Trustee to rely on the Debtors' payment records to identify preferential or fraudulent transfers made by the Debtors, on the assumption that those records were accurate. *Cf. Anzures v. Prologis Tex. I LLC*, 886 F. Supp. 2d 555, 568 (W.D. Tex. 2012) (finding that a movant exercised *reasonable* diligence despite having access to information that would have allowed it to identify another potentially liable party before the amendment deadline).

Aside from its assertion that the Trustee knew or should have known of the need to amend, Wall Street does not argue that the Trustee failed to diligently adhere to the Scheduling Order.

---

[6] Uplift's SOFA discloses that a $445,064 transfer was made to Twin Lakes Pharmacy on January 1, 2017. (ECF No. 31-6 at 2).

[7] The Debtor's SOFA discloses two transfers, a $48,656 transfer and a $403,729.94 transfer, made to Peterson Pharmacy. (ECF No. 31-1 at 9, 14). The Trustee seeks to avoid these transfers through its Amended Complaint, though they were not identified in the Original Complaint. (ECF No. 23-1 at 38).

Moreover, the Trustee attempted to comply with the discovery deadlines set out in the Scheduling Order.  The Trustee served his first discovery requests well before the discovery deadline.  In response to these requests, Wall Street denied being the transferee of the Original Transfers.  This response caused the Trustee to conduct an additional investigation into the Debtors' pre-petition transfers.  Nevertheless, before the deadline for discovery and without having had an opportunity to depose Mr. Jones,[8] the Trustee moved to amend the Original Complaint.  The record suggests the Trustee diligently pursued additional information needed to amend the complaint before the close of discovery.  *See, e.g., Mailing & Shipping Sys., Inc. v. Neopost USA, Inc.*, 292 F.R.D. 369, 374 (W.D. Tex. 2013) (allowing modification of a scheduling order to enable the plaintiff to amend the complaint by adding a claim based on information discovered in a deposition taken after the pleading amendment deadline).  Despite this diligence, the Trustee could not reasonably have met the amendment deadline, given that it was just two weeks after the Trustee received Wall Street's discovery response.  *See S&W Enters.*, 315 F.3d at 535 (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)).

Wall Street does not dispute the importance of the Trustee's amendment.  Enabling the Trustee to amend would allow the Trustee to potentially recover more for the estate than the Trustee could under the Original Complaint.  (*See, e.g.,* ECF No. 23-1 at 38).  Without an argument to the contrary, the importance of enhancing the Trustee's ability to recover funds for the estate weighs in favor of modification.  *Cf. Anzures*, 886 F. Supp. 2d at 568 (finding that a failure to explain the importance of the amendment, when the nonmovant challenged its importance, weighed against granting a Rule 16(b) modification).

---

[8] The COVID-19 pandemic hindered the Trustee's attempts to depose Mr. Jones.  (ECF No. 23 at 5).

Similarly, Wall Street does not point to any prejudice it will suffer if the Scheduling Order is modified to allow the Trustee's amendment.[9]  Moreover, the parties' have been particularly accommodating in affording each other additional time at various stages of this litigation.  (*See e.g.,* ECF Nos. 16, 42).  In fact, the parties recognize that the outcome of the Trustee's Motion for Leave to Amend will require continuance of the trial date to allow additional time for discovery. (ECF No. 42 at 2).  While the Trustee's motion may pose a slight danger of prejudice, it is prejudice that can be cured through the parties' continued cooperation over scheduling.  *See Mailing & Shipping Sys.*, 292 F.R.D. at 376 (noting that prejudice can be cured through the postponement of trial to allow for additional discovery and motions practice).

The Trustee offered an adequate explanation for his failure to amend the complaint by the Scheduling Order deadline.  The proposed amendment is important.  Wall Street and the Additional Defendants will not suffer incurable prejudice.  Good cause exists under Rule 16(b) to allow the Trustee to proceed on his motion for leave to amend the complaint.  *See S&W Enters.,* 315 F.3d at 535–36.

## II.    RULE 15 LEAVE TO AMEND

Modification of the Scheduling Order is only the first hurdle the Trustee must clear before leave to amend is warranted.  The Trustee must also demonstrate that "justice so requires" a grant of leave.  FED. R. CIV. P. 15(a)(2).  The Trustee argues there is such a requirement here.  Wall Street disagrees.  Specifically, Wall Street argues that amendment of the Original Complaint would be futile because the claims asserted in the Amended Complaint are time-barred.  Wall Street is

---

[9] Wall Street does argue that Kathryn Jones, one of the Additional Defendants, would suffer prejudice in having to defend "time-barred" claims while in remission from cancer. (ECF No. 27 at 11).  The prejudice Ms. Jones may suffer is more appropriately considered under Rule 15(a)'s "undue prejudice" factor.  *See SGK Properties, L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Commercial Mortgage Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 944–45 (5th Cir. 2018), *cert. denied sub nom. SGK Properties, L.L.C. v. U.S. Bank Nat. Ass'n*, 139 S. Ct. 274 (2018).

correct with respect to the Additional Transfer claims proposed by the Trustee.  Likewise, Wall Street is correct that the claims asserted against the Additional Defendants are time-barred, *except* those asserted against PetersonRX and Mr. Jones.  The Trustee is granted leave to amend the Original Complaint to include PetersonRX and Mr. Jones as defendants.

Rule 15(a)(2) empowers a court to "freely" grant a party leave to amend its pleading "when justice so requires."  FED. R. CIV. P. 15(a)(2).  Denial of leave must be predicated on a "substantial reason."  *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000).  Courts consider five factors in deciding whether a "substantial reason" exists:  (1) whether there was undue delay in moving to amend; (2) whether the amendment is the product of bad faith or a dilatory motive; (3) whether the movant repeatedly failed to cure deficiencies with prior amendments; (4) whether the opposing party will suffer undue prejudice; and (5) whether the amendment is futile.  *SGK Properties, L.L.C.*, 881 F.3d 933, 944 (5th Cir. 2018) (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)).  Wall Street's opposition to the Trustee's motion focuses on the alleged futility of the Trustee's amendment.[10]

An amendment is futile if it alleges claims that are time-barred.  *See Whitt v. Stephens County*, 529 F.3d 278, 282–83 (5th Cir. 2008).  Futility alone is a "substantial reason" to deny leave to amend.  *See, e.g., id.* at 282.  ("We need not consider whether the court abused its discretion in denying leave to amend based on undue delay and prejudice, because . . . the statute of limitations rendered amendment of the complaint futile.").  However, if the amendment "relates

---

[10] Wall Street arguably asserts that the Trustee unduly delayed in seeking leave to amend.  (*See* ECF No. 32 at 4–6).  However, Wall Street does not claim that it would be suffer prejudice based on the timing of the Trustee's motion.  *See Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) ("And, we know that delay alone is an insufficient basis for denial of leave to amend: The delay must be undue, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court.").  Thus, the only viable argument Wall Street asserts against the Trustee's motion is that the proposed amendment would be futile.

back" to the original complaint, claims that would otherwise be time-barred may be asserted. *Id.* (citing FED. R. CIV. P. 15(c)).

Wall Street contends that the claims asserted in the Amended Complaint are time-barred under 11 U.S.C. § 546. Section 546(a) provides the statute of limitations for claims premised on the Trustee's avoidance powers. 11 U.S.C. § 546(a) (2018). Under § 546(a), the Trustee cannot initiate an avoidance action after "2 years from the entry of the order for relief" or "1 year after the appointment or election of the first trustee," whichever occurs later. § 546(a)(1). The Trustee instituted this adversary proceeding on April 5, 2019. The latest § 546(a) would allow the Trustee to institute an avoidance action was April 8, 2019.[11] The motion for leave to amend was filed on June 10, 2020. Consequently, the claims asserted in the Amended Complaint are time-barred by § 546(a), unless they relate back under Rule 15(c).

Rule 15(c) identifies three categories of amendments that relate back to the date of the original complaint. First, new claims will relate back if the applicable statute of limitations allows. FED. R. CIV. P. 15(c)(1)(A). Second, if the new claims arise out of the same "conduct, transaction, or occurrence" pleaded in the original complaint, they will relate back. FED. R. CIV. P. 15(c)(1)(B). Finally, claims against a new defendant will relate back if the new defendant receives "notice" of the action within the time for serving the summons and complaint under Rule 4(m), and the new defendant "knew or should have known that the action would have been brought against it, but for mistake . . . ." FED. R. CIV. P. 15(c)(1)(C)(i)–(ii). The Trustee wishes to add new claims under Rule 15(c)(1)(B), as well as new parties under Rule 15(c)(1)(C).

---

[11] This is true even for the new claims the Trustee asserts under the Texas and Utah fraudulent conveyance statutes. Trustees may invoke state fraudulent conveyance statutes to avoid fraudulent transfers made by debtors under 11 U.S.C. § 544(b). Yet § 546 restricts a trustee's use of § 544(b) to the limitations period provided in § 546(a). 5 COLLIER ON BANKRUPTCY P 544.06 (16th 2020).

## A.     Adding New Claims Under Rule 15

The Trustee seeks leave to amend the original complaint to add claims based on 13 Additional Transfers.  Unless the Additional Transfer claims satisfy the relation-back requirements of Rule 15(c)(1)(B), the claims are time-barred by 11 U.S.C. § 546(a).  Because these claims do not arise from the same "conduct, transaction, or occurrence," they do not satisfy the requirements for relation back under Rule 15(c)(1)(B).

Claims that are the "natural offshoot" or part of the same "basic scheme" arise from the same "conduct, transaction, or occurrence" pleaded in the original complaint.  *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (citing *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 9, 12 (S.D.N.Y. 1985)).  New avoidance claims are generally treated as separate, distinct transactions that do not relate back under Rule 15(c).  *See Securities Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 210 (Bankr. S.D.N.Y. 2018) (quoting *In re M. Fabrikant & Sons, Inc.*, 480 B.R. 480, 492 (S.D.N.Y. 2012), *aff'd*, 541 Fed. Appx. 55 (2d Cir. 2013)).  However, just as claims arising from the same "basic scheme" relate back, so too do newly pleaded avoidance claims that arise from the same "course of conduct" pleaded in the original complaint.  *In re Juliet Homes*, LP, 07-36424, 2011 WL 6817928, at *6 (Bankr. S.D. Tex. Dec. 28, 2011) (quoting *Adelphia Recovery Trust v. Bank of America, N.A.,* 624 F.Supp.2d 292, 334 (S.D.N.Y. 2009)).  Consequently, the Additional Transfer claims will relate back if: (1) the Amended Complaint alleges that the Additional Transfers were part of a course of conduct alleged in the Original Complaint; and (2) the Original Complaint notified the parties, against whom the Additional Transfer claims are asserted, that the Trustee could pursue avoidance of the Additional Transfers associated with the course of conduct alleged in the Original Complaint.  *Id.* at *7 (citing *Adelphia*, 624 F. Supp. 2d at 334).

Nothing in the Original Complaint suggests that a common course of conduct encompassed both the Original and Additional Transfers. The Trustee's bald characterization of the transactions between the Debtors, Wall Street, and the Additional Defendants as a "convoluted payment scheme" does not establish that the Additional Transfers were part of the same "course of conduct." *Securities Inv'r Prot.*, 594 B.R. at 210 (quoting *In re Metzeler*, 66 B.R. 977, 983 (Bankr. S.D.N.Y. 1986)) ("[T]he 'mere allegation' that the previously identified transfers and the newly added transfers are 'all . . . fraudulent transfers does not make them part of the same conduct.'"). A "course of conduct," upon which the relation back of avoidance claims may be predicated, generally refers to a scheme with a fraudulent purpose. *See, e.g., id.* at *6–8 ("From the time of the original complaint, the Trustees have alleged an overarching Ponzi scheme. . . . The fraudulent transfers alleged in the original complaint, along with the new transfers alleged in the [amended complaint], are . . . part of this overall Ponzi scheme."); *In re Bernard L. Madoff Inv. Sec. LLC*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) ("the Trustee sets forth the [new avoidance claims] under the same legal theories as the ones set forth in the Original Complaint . . . including that [the debtor] was engaged in a Ponzi scheme and made the Transfers with the actual intent to defraud its creditors."); *Adelphia*, 624 F. Supp. 2d at 297, 334 (finding new fraudulent transfer claims related back because they were part of the same financial fraud scheme alleged in the original complaint). The Original Complaint does not allege that the Debtors and Wall Street (or the Additional Defendants) were engaged in any fraudulent scheme or common "course of conduct."[12]

---

[12] Moreover, the "payment scheme" alleged in the Amended Complaint bears little resemblance to the nefarious schemes previously recognized as "course[s] of conduct." *See, e.g., Juliet Homes*, 2011 WL 6817928, at *6–8; *Madoff Inv. Sec.*, 468 B.R. at 633 (finding a common course of conduct where fraudulent transfers were made from a pool of corporate funds operated as a "piggy bank" for the personal use of insiders); *Adelphia*, 624 F. Supp. 2d at 297, 334 (finding a common course of conduct where corporate assets were used as collateral for a credit facility used to pay for the personal expenses of company directors and their families).

Nor do the allegations in the Original Complaint attempt to link the Original Transfers to any common "course of conduct."

Because the Original Complaint does not identify a "course of conduct" from which the Additional Transfer claims arose, Wall Street and the Additional Defendants could not have received notice of these claims. *Cf. Juliet Homes*, 2011 WL 6817928, at *7 ("*From the time of the Original Complaint*, the Trustees have alleged an overarching Ponzi scheme." (emphasis added)). Further, nothing in the Original Complaint suggested the existence of an ongoing investigation focused on uncovering additional transfers linked to a common course of conduct. *Cf. Madoff Inv. Sec.*, 468 B.R. at 633 ("[A]llegations in the Original Complaint . . . gave reasonable notice that the Trustee was still uncovering additional transfers . . . ."). Without allegations of a common course of conduct, the Original Complaint could not have put the defendants on notice that the Additional Transfer claims were forthcoming. *See In re M. Fabrikant & Sons, Inc.*, 447 B.R. 170, 181 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 Fed. Appx. 55 (2d Cir. 2013) (quoting *Chaus Sec. Litig.*, 801 F.Supp. at 1264) ("The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party by the general fact situation alleged in the original pleading." (internal quotation marks omitted)).[13]

Absent allegations linking the Additional Transfers to a common course of conduct alleged in the Original Complaint, the Additional Transfer claims do not arise from the same "conduct, transaction, or occurrence." FED. R. CIV. P. 15(c)(1)(B). Instead, each Additional Transfer claim is considered to have arisen from a distinct "transaction, or occurrence." *See Securities Inv'r Prot. Corp.*, 594 B.R. at 210. The distinctive character of the Additional Transfer claims precludes their

---

[13] This conclusion is undisturbed by the reservation of rights in the Original Complaint, as the reservation of rights does not attempt to link the alleged undiscovered transfers to a common course of conduct from which the Original Transfers arose. (*See* ECF No. 1 at 24).

relation back under Rule 15(c)(1)(B).  Hence, these additional claims are time-barred by § 546(a).
An amendment to include the Additional Transfer claims would be futile.  Leave to amend to add
the Additional Transfer claims is Denied.

### B.    Adding New Parties Under Rule 15

The Trustee seeks leave to amend to assert the Original Transfer claims against the
Additional Defendants.  Section 546(a) applies to the assertion of the Original Transfer claims
against the Additional Defendants.  To avoid the limitation imposed by § 546(a), the Trustee's
claims against the Additional Defendants must relate back under Rule 15(c).  Wall Street's relation
to PetersonRX and Mr. Jones afforded these two parties the notice required for relation back under
Rule 15(c)(1)(C).  However, the remaining Additional Defendants did not receive adequate notice
of the Trustee's action.

Rule 15(c)(1)(C) provides for the relation back of previously alleged claims asserted
against new or different parties.  FED. R. CIV. P. 15(c)(1)(C).[14]  The relation back of a claim against
new or different defendant requires: (1) the claim to arise from the same "conduct, transaction, or
occurrence" alleged in the original complaint; (2) the new party's receipt of adequate notice of the
action within the Rule 4(m) period (90 days from the filing of the complaint); and (3) that, based
on this notice, the new party "knew or should have known that the action would have been brought
against it, but for a mistake . . . ."  FED. R. CIV. P. 15(c)(1)(C)(i)–(ii).  Rule 15(c)(1)(C) prevents
prospective defendants from receiving a "windfall" simply because a plaintiff "misunderstood a

---

[14] Rule 15(c)(1)(C) is construed liberally to allow the substitution, as well as the addition, of new defendants
to relate back to the time of filing.  *See, e.g., Bush v. Sumitomo Bank & Tr. Co.*, Ltd., 513 F. Supp. 1051, 1052–54
(E.D. Tex. 1981) (acknowledging that the addition of a new party, as opposed to a substitution, related back under
Rule 15(c)); *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 468 (4th Cir. 2007) (quoting *Lundy v. Adamar of N.J.,
Inc.*, 34 F.3d 1173, 1192–93, 1192 n.13 (3d Cir.1994)) ("[Movant] 'changed' the party he was suing, as required by
Rule 15(c)(3), because 'an *addition* to something is generally regarded as a *change* to that thing.'" (emphasis in
original))*; Gabriel v. Kent Gen. Hosp. Inc.*, 95 F.R.D. 391, 394 (D. Del. 1982) ("[R]ule 15(c) authorizes relation back
in situations in which a new party is substituted or added, as well as those in which a party originally intended to be
named has been misnamed or misdescribed.").

crucial fact about [the defendant's] identity." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010).

1.     Claims Arising from the Same "Conduct, Transaction, or Occurrence"

Wall Street does not dispute that the Original Transfer claims, which the Trustee now seeks to assert against the Additional Defendants, arise out of the same "conduct, transaction, or occurrence" alleged in the Original Complaint.  Thus, the first requirement of Rule 15(c)(1)(C) is satisfied.  *See, e.g., Tapp v. Shaw Envtl., Inc.*, 401 Fed. Appx. 930, 934 (5th Cir. 2010) (recognizing that asserting a claim arising from the same facts originally pleaded against a new defendant satisfies the first requirement of Rule 15(c)(1)(C)).

2.     Notice of the Action

Two of the Additional Defendants—PetersonRX and Mr. Jones—received adequate notice of the Trustee's action.  However, the record forecloses a finding that the remaining Additional Defendants received notice as required by Rule 15.

Adequate notice under Rule 15(c)(1) does not require *actual* notice.  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 378 (5th Cir. 2010).  Service on the new party's agent will adequately notify the new party of the existence of the action.  *Ramirez v. Burr*, 607 F. Supp. 170, 173 (S.D. Tex. 1984) (quoting K*irk v. Cronvich,* 629 F.2d 404, 407 (5th Cir. 1980)).  Similarly, a new party sharing an "identity of interest" with the party originally served will be deemed to have received notice of the action under Rule 15(c)(1)(C).  *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998).  A shared identity of interest exists when the parties' business operations or other activities are "so closely related . . . that the institution of an action against one serves as notice of the litigation to the other."  *Id.* (quoting *Kirk*, 629 F.2d at 407).

Wall Street shares an identity of interest with PetersonRX and Mr. Jones. A shared identity of interest is usually predicated on the intermingling of the parties' places of business, employees, and officers. *See, e.g., Gifford v. Wichita Falls & S. Ry. Co.*, 224 F.2d 374, 376 (5th Cir. 1955) ("Both corporations were, from the beginning, aware of the pendency of this action. They officed together and had common employees.");[15] *but see, e.g., In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1025–26 (2d Cir. 1989) ("[T]he parent-subsidiary relationship standing alone is simply not enough . . . . The two businesses must have organized or conducted their activities in a manner that strongly suggests a close linkage."). For instance, in *Gifford v. Witchita Falls & S. Ry. Co.*, notice was found where one company was mistakenly sued and served in lieu of another company because the two companies shared offices and employees from one company performed services for the other company. 224 F.2d at 375–76. There, the Fifth Circuit held that to deny leave to amend, despite the closeness of the companies, would be "a denial of justice." *Id.* at 376–77. Wall Street shares these indicia of a close relationship with PetersonRX and Mr. Jones.

Mr. Jones is Wall Street's manager and *registered* agent. Mr. Jones also serves as the manager and *registered* agent of Jones Family Enterprises, LLC. Jones Family Enterprises serves as the manager and registered agent of PetersonRX LLC. The managers and registered agents of Wall Street, Jones Family Enterprises, and PetersonRX all share the same address—2 Falconwood Ln., Sandy, UT. (ECF Nos. 23-3, 23-5, 33-4). Wall Street does not dispute the existence of these relationships. Instead, Wall Street contends that the Trustee's failure to include the names of the

---

[15] *See also Travelers Indem. Co. v. U.S., for Use of Constr. Specialties Co.*, 382 F.2d 103, 106 (10th Cir. 1967) (holding that service on a parent company—which owned 100% of a subsidiary, shared offices with the subsidiary, had the same managers and directors as the subsidiary—adequately notified the company's subsidiary of the action); *Bernstein v. Uris Bldg. Corp.*, 50 F.R.D. 121, 122 (S.D.N.Y. 1970) (finding that "notice to one [company] was notice to the other [company]" because the companies, while not "one and the same," were "substantially similar, sharing officers and directors in common," as well as the same office).

Additional Defendants in the Original Complaint precludes a finding that the Additional Defendants received adequate notice.

Wall Street's argument is unpersuasive and without authoritative support.  If the Trustee had included the Additional Defendants, there would be no need for the Trustee to amend the Original Complaint.  But the Trustee did not know and now must utilize Rule 15 to sue the proper defendants.   The substantial relationship between Wall Street and PetersonRX afforded PetersonRX notice of the Trustee's action.   That is, because Wall Street and Jones Family Enterprises, which manages PetersonRX, share Mr. Jones as a manager and *registered* agent, PetersonRX received the same notice it would have received had it been sued originally.  *See Infotronics Corp. v. Varian Associates Corp.*, 45 F.R.D. 91, 93 (S.D. Tex. 1968) ("[The intended party] received the same notice of the claim that it would have received had it been properly named.").  This notice allowed PetersonRX to avoid prejudice, which may have been caused by its mistaken omission from the Original Complaint.  *Gifford*, 224 F.2d at 376 (imputing notice of an action against one company on another company, which shared directors and offices with the company served).

Similarly, Mr. Jones received adequate notice of the Trustee's avoidance action.  Service on an entity can serve as proper notice to an individual associated with the entity, so long as the entity and individual share an identity of interest.  *See, e.g., Kirk*, 629 F.2d at 408 n.4 ("Certainly the sheriff and the sheriff's office share a close enough relationship so that we can conclude that notice to one is notice to the other under the identity of interest theory."); *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1456 (E.D. Pa. 1992) (citing *Itel Corp v. Cups Coal Co.*, 707 F.2d 1253 (11th Cir.1983)) ("When a corporate entity is named in a complaint, those who own it or run its day-to-day business are typically deemed to have received constructive notice of

the action."). It is undisputed that Mr. Jones served as Wall Street's manager and agent of service. In fact, Mr. Jones admits he personally received service of the Original Complaint. (ECF No. 27-1 at 1). Mr. Jones cannot claim he did not receive notice of this action within the Rule 4(m) period.

In contrast, Ms. Jones did not receive adequate notice of the Trustee's action. The only evidence linking Ms. Jones to the Trustee's action is Ms. Jones's position as a member of Jones Family Enterprises, which shares a manager and a business address with Wall Street. (ECF No. 23-6 at 1). The Trustee offers no authority establishing that Ms. Jones could be charged with notice of an action asserted against one entity, with which Ms. Jones has no formal relation, based on that entity's relationship with another entity, of which Ms. Jones is a member.[16]   Additionally, there is no evidence establishing that Ms. Jones received actual notice of the Trustee's suit.   To borrow from the Seventh Circuit, "it is clear that sufficient identity of interest to warrant imputation of notice is lacking" with respect to Ms. Jones. *Allbrand Appliance & Television*, 875 F.2d at 1025.

The Trustee also contends that Twin Lakes, David, Alameda, El Dorado, and Baytree received the notice required by Rule 15(c)(1)(C)(i) because Mr. Jones, whom the Trustee contends is an agent of these entities, received service of the Original Complaint.[17]  It is true that service on

---

[16] The Trustee's argument that Ms. Jones was an agent of Mr. Jones because Ms. Jones had knowledge of fraudulent acts perpetrated by Mr. Jones is without merit. *In re Allison* addressed whether a debtor's spouse's fraudulent acts could be imputed onto the debtor to prevent discharge. 960 F.2d 481, 485–86 (5th Cir. 1992). The court held that, absent evidence establishing that the debtor knew that the spouse was carrying out fraudulent acts within the scope of the debtor's authority, fraud would not be imputed onto the debtor. *Id.*  Nothing in the record suggests that Ms. Jones knew of any allegedly fraudulent acts carried out by Mr. Jones. Moreover, the Trustee has not alleged Mr. Jones perpetrated any actually fraudulent acts.  Nor did the Trustee need to allege fraud against Mr. and Ms. Jones.  Section 548(a)(1) authorizes the Trustee to recover fraudulent transfers made by the *debtor*, not transfers fraudulently accepted by a transferee. 11 U.S.C. § 548(a)(1)(A). Finally, given that Rule 9 requires fraud to be pleaded with particularity, and the Trustee did not even plead it generally, a finding of fraud against Mr. Jones and imputation of that fraud on Ms. Jones is completely unsupported by the pleadings and the record. *See* FED. R. CIV. P. 9(b).

[17] The Trustee contends Mr. Jones is an agent for these entities because he has communicated on their behalf and holds credit cards in *some* of these entities' names.

an entity's agent can provide notice to that entity. *Ramirez*, 607 F. Supp. at 173 (quoting *Kirk,* 629 F.2d at 407). That is, service on an agent can provide the requisite notice when the service provides the newly added party with the same notice it would receive had it been sued originally. *See Infotronics Corp.*, 45 F.R.D. at 93.

Yet the evidence produced by the Trustee does not establish that the remaining Additional Defendants received adequate notice through service on Mr. Jones. In *Ramirez*, the director of the agency sued by the plaintiff was served with the complaint. 607 F. Supp. at 173. The plaintiff there also intended to sue members of the agency's board of directors but did not know the names of those board members. *Id.* The plaintiff's service on the director was deemed adequate under Rule 15 because the director, as the agency's director, was the agent of the board members. *Id.* Service on a former agent was also found to be adequate under Rule 15 in *Infotronics,* 45 F.R.D. at 93–94. There, the plaintiff intended to sue a subsidiary of a parent company, but the plaintiff was unaware that the subsidiary had been consumed by the parent prior to the institution of the action. *Id.* at 92. Believing that the subsidiary was still independent from the parent entity, the plaintiff served the agent of service for the subsidiary. *Id.* However, the agent for the former subsidiary was not the agent for the parent. *Id.* Nevertheless, it was undisputed that the former subsidiary's agent promptly notified the parent of the action. *Id.* This prompt notice allowed the parent to receive the same notice it would have received had the plaintiff sued the correct party. *Id.* at 93–94.

Unlike the agent in *Ramirez*, the Trustee did not adduce evidence establishing that Mr. Jones was the agent for service of any of these other entities.[18] That is, the Trustee offers nothing

---

[18] Moreover, it appears that Mr. Jones did not own these remaining Additional Defendants, unlike Wall Street, Jones Family Enterprises, and PetersonRX. (*See* ECF No. 33-8 at 2–3). Mr. Jones also had to inform the other owners when payments were received from the Debtors, making it unlikely that these other Additional Defendants received notice simply through service on Mr. Jones. (*See* ECF No. 33-8 at 2–3).

to establish that Mr. Jones's relationship to these other entities would satisfy the notice requirements in Rule 4(h).  *See* FED. R. CIV. P. 4(h).[19]  And, unlike *Infotronics*, nothing in the record establishes that Mr. Jones notified these Additional Defendants of the claims in the Original Complaint.  The fact that Mr. Jones held credit cards in these entities' names and acted on their behalf with respect to payments from the Debtors does not establish that these Additional Defendants received adequate notice.  Absent from the record is any evidence that these Additional Defendants received the same notice they would have received had they been named in the Original Complaint.  *See id.*; *see also Bisby v. Garza*, CIV.A. C-07-404, 2008 WL 4179237, at *2 (S.D. Tex. Sept. 8, 2008) (quoting 35A C.J.S. Federal Civil Procedure § 247) ("The principal purpose of [Rule 4(h)] with respect to service on an agent of the corporation or association is to render it reasonably certain that the corporation will receive prompt and proper notice in an action against it.").  Based on the record, it is unclear whether Twin Lakes, David, Alameda, El Dorado, and Baytree received adequate notice of the Trustee's action.  It was the Trustee's burden to establish receipt of such notice and that burden has not been satisfied.

Service on Wall Street only provided adequate notice to Jones Family Enterprises, PeteresonRX, and Mr. Jones.[20]

### 3.  Knowledge of Mistaken Identity

The Original Complaint imbued PetersonRX and Mr. Jones with actual or constructive knowledge that they were mistakenly omitted from the Original Complaint.  PetersonRX and Mr. Jones received notice of this action.  The Original Complaint's allegations made clear that the

---

[19] Rule 4(h) applies in this adversary proceeding under Bankruptcy Rule 7004(a).  FED. R. BANKR. P. 7004(a).

[20] Wall Street, through Mr. Jones, received the complaint on April 11, 2019, well within the Rule 4(m) period. (ECF Nos. 27-1 at 1; 4 at 2).  Thus, Jones Family Enterprises, PetersonRX, and Mr. Jones received notice within the Rule 4(m) period.

intent of this action was to avoid and recover the Original Transfers.  Based on these allegations, PetersonRX and Mr. Jones knew or should have known that they were the intended targets of the Original Complaint.

Satisfaction of Rule 15(c)(1)(C)(ii) depends not on what the plaintiff knew or should have known, but on what the "prospective defendant knew or should have known."  *Krupski*, 560 U.S. at 548.  The plaintiff's knowledge is relevant only to the extent it "bears on the [prospective] defendant's understanding of whether the plaintiff made a mistake."  *Id.*  To that end, a plaintiff's deliberate choice to sue one defendant instead of another, when informed by a *complete* understanding of the facts giving rise to the claim, will foreclose relation back under Rule 15(c)(1)(C).  *Id.* at 549, 552.  However, mere knowledge of the *existence* of the proper defendant will not preclude the plaintiff's amendment from satisfying the requirements of Rule 15(c)(1)(C)(ii).  *Id.* at 549.  In fact, a plaintiff's misunderstanding about the status or identity of parties is the type mistake Rule 15(c) was intended to remedy.  *See id.* at 549–51 ("It is conceivable that . . . litigants knew or reasonably should have known the identity of the proper defendant. . . . Nonetheless, the Advisory Committee clearly meant their filings to qualify as mistakes under the Rule.").  At bottom, Rule 15(c)(1)(C)(ii)'s primary focus is on the prospective *defendant's* knowledge and whether the *defendant* knew or should have known of the plaintiff's mistake.  *Id.* at 548–49, 554–57.

Opposing the Trustee's motion, Wall Street relies on *Triago v. TDCJ-CID Officials*,[21] arguing that the Trustee's lack of knowledge as to the proper defendants precludes relation back. This reliance is misplaced.  Wall Street offers no explanation as to how the Trustee's lack of knowledge affected what PetersonRX and Mr. Jones knew or should have known.  While the court

---

[21] CIV.A. H-05-2012, 2010 WL 3359481 (S.D. Tex. Aug. 24, 2010).

in *Triago* did consider the plaintiff's lack of knowledge, it did so because that lack of knowledge affected whether the prospective defendants knew or should have known of the plaintiff's mistake. *See* 2010 WL 3359481, at \*14 (finding that the original complaint would not have put the prospective defendants on notice of the plaintiff's mistake); *accord Krupski*, 560 U.S. at 548. Nevertheless, Wall Street urges a hardline rule that a plaintiff's lack of knowledge of a prospective defendant, in any case, is not the type of "mistake" contemplated by Rule 15(c). *See Triago*, 2010 WL 3359481, at \*18 (quoting *Jacobsen,* 133 F.3d at 320) ("In the Fifth Circuit, lack of knowledge of a proposed new defendant is not a 'mistake concerning the party's identity' within the meaning of Rule 15(c)."). Such a rule is contrary to the Supreme Court's holding in *Krupski* and requires a reading of *Triago* that is too broad.

*Triago* does not undermine the Supreme Court's directive to consider the prospective defendant's knowledge alone. In *Triago*, leave to amend to assert previously pleaded claims against additional defendants was denied because the amendment would have been futile due to the expiration of the applicable statute of limitations. *Id.* at \*14, 18. Relation back could not be used to overcome this limitation because the plaintiff did not make a mistake concerning the identity of the proper defendant. *Id.* The court found that it was not a "mistake" for the plaintiff to name "John Does" in the original complaint. *Id.* at \*18. Rather, the plaintiff simply did not know the identity of other potential defendants at the time of filing and made the conscious decision to name "John Does" instead of conducting a more thorough investigation. *See id.* ("In the present case, there has been no such mistake. The plaintiffs did not mistakenly sue party A instead of party B. . . . [T]hrough discovery, . . . [the plaintiff] has learned about additional [parties] . . . . This is not the type of "mistaken identity" that Rule 15 is intended to address."). The intentional naming of "John Does" was not a "mistake" and would not have alerted the prospective

defendants of the plaintiff's intent to name them instead.  *Id.* at \*17–18 ("But the plaintiff must make a *mistake* about the unnamed party, and, but for that mistake, the unnamed party would have been named as a defendant and was on notice that, but for the mistake, would have been named." (emphasis in original)).  *Triago's* focus on how the plaintiff's knowledge affected the defendant's knowledge is consistent with *Krupski*.  *See Krupski*, 560 U.S. at 548 ("Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity.").[22]

The Trustee here did not knowingly lack knowledge of the proper defendants and blindly proceed anyway.  Instead, the Original Complaint "mistakenly [named] party A instead of party B."  *Triago*, 2010 WL 3359481, at \*18; *accord Krupski*, 560 U.S. at 549 (quoting FED. R. CIV. P. 15(c)(1)(C)(ii) ("A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. . . . If the plaintiff sues party B instead of party A under these circumstances, she has made a 'mistake concerning the proper party's identity' . . . .").  That is, the avoidance claims alleged in the Original Complaint were asserted against Wall Street because Wall Street was listed as the payee in the Debtors' accounts payable records.  Come to find out, based on Wall Street's discovery responses, these allegations were incorrect.  Instead of Wall Street receiving the transfers as reflected by the Debtors' accounts payable, other parties, as Wall Street's discovery responses indicated and the Trustee now alleges, specifically PetersonRX and Mr. Jones, received the ultimate benefit of these transfers.  This is the very case of mistaken identity Rule 15(c) was intended to remedy.  *See Krupski*, 560 U.S. at 550–51 (explaining that Rule 15(c) was intended to serve as a remedy for plaintiffs who mistakenly

---

[22] This consistency is reinforced by *Triago's* finding that the prospective defendants never received notice of the plaintiff's original complaint because they did not share an identity of interest with any party to the original complaint.  2010 WL 3359481, at \*14. Here, Mr. Jones and PetersonRX both share an identity of interest with Wall Street.

sued the incorrect party and did not discover the mistake until after the statute of limitations expired).

Not only does the Trustee's "mistake" fall under the auspices of Rule 15(c), the Original Complaint placed, or should have placed, Wall Street, PetersonRX, and Mr. Jones on notice of the mistake. Each Original Transfer was specifically identified in the Original Complaint. In identifying each Original Transfer, the Original Complaint noted the date each transfer was made, as well as the amount transferred. Given that Mr. Jones was involved in the distribution of payments received from the Debtors, (*See* ECF No. 33-8 at 3), all the Original Transfers likely crossed Mr. Jones's desk. In addition to this awareness, Mr. Jones's management roles at Wall Street and PetersonRX make it near impossible to conclude that PetersonRX and Mr. Jones lacked actual or constructive knowledge of the mistake in the Original Complaint. *Cf. Krupski*, 560 U.S. at 554–56 (explaining that a complaint describing the basis for a plaintiff's claim should put a prospective defendant, to the extent it is engaged in the activities described in the complaint, on notice that the plaintiff may have mistakenly named the wrong defendant). Finally, the close relationship between Wall Street, PetersonRX, and Mr. Jones solidifies the conclusion that PetersonRX and Mr. Jones knew or should have known of the Trustee's mistake. *See id.* at 556 ("This interrelationship and similarity heighten the expectation that [the prospective defendant] should suspect a mistake has been made when [the defendant] is named in a complaint that actually describes [the prospective defendant's] activities.").

The Original Transfer claims the Trustee seeks leave to assert against PetersonRX and Mr. Jones relate back to the filing of the complaint. Allowing PetersonRX and Mr. Jones to escape liability because of a mistake in the Original Complaint, despite their actual or constructive awareness of that mistake, would provide PetersonRX and Mr. Jones with a windfall. *Krupski*,

560 U.S. at 550.  Such a windfall is exactly the result Rule 15(c) was intended to ameliorate.
Because the Trustee's claims against PetersonRX and Mr. Jones relate back, they are not barred
by the statute of limitations in 11 U.S.C. § 546(a).

There is no substantial reason to deny the Trustee leave to amend the complaint to assert
the Original Transfer claims against PetersonRX and Mr. Jones.  *See Stripling*, 234 F.3d at 872.
However, adding the remaining Additional Defendants and the 13 Additional Transfer claims to
this action would be futile, as these claims are time-barred.  *See Whitt*, 529 F.3d at 282–83.
Consequently, there is a substantial reason to deny the Trustee's request for leave to amend to the
extent the proposed amendment is futile.  *See id.* at 282.

## CONCLUSION

The Trustee's Motion for Leave to Amend the Complaint is Granted to the extent the
Trustee seeks to add PetersonRX and Mr. Jones as defendants.  The Trustee's motion is Denied
with respect to all other proposed amendments.  A separate Order will be issued.

SIGNED 01/21/2021

Marvin Isgur
United States Bankruptcy Judge